UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR MIDWEST BANK AND TRUST COMPANY, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 13 C 3230 |
| v. | ) ) | Judge Joan B. Gottschall |
| JAMES J. GIANCOLA; JEROME JAY FRITZ a/k/a J.J. FRITZ; ANGELO A. DIPAOLO; BARRY I. FORRESTER; ROBERT J. GENETSKI; GERALD F. HARTLEY; HOMER J. LIVINGSTON, JR.; JOSEPH R. RIZZA; EGIDIO V. SILVERI a/k/a E.V. SILVERI; LEON WOLIN; THOMAS A. CARAVELLO; SHELDON BERNSTEIN; THOMAS H. HACKETT; MARY M. HENTHORN; KELLY J. O'KEEFFE; BROGAN M. PTACIN; JOHN S. SPEAR; and WILLIAM H. STOLL, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

The FDIC has sued the former officers and directors of Midwest Bank and Trust Company ("Midwest"), alleging that their gross negligence caused the bank to lose $62 million in unpaid loans and $66 million in preferred stock that the bank held in mortgage lenders Fannie Mae and Freddie Mac. The defendants have moved to dismiss the complaint, arguing that their decisions to approve the loans and retain the stock are shielded by the business judgment rule. Five other judges in this district have rejected this argument in cases involving substantially similar allegations. Those judges have held that where the FDIC alleges that the defendants failed to obtain necessary information to make rational business decisions, the business judgment

rule does not warrant dismissal. Because the FDIC has alleged that was the case here, the motion to dismiss is denied.

**I. BACKGROUND**

Midwest was an Illinois-chartered bank based in Elmwood Park, Illinois. It was a member of the Federal Reserve System, and its deposits were insured by the FDIC. In 2003, state regulators investigated the bank and found that its risk management practices were inadequate given the size and risk profile of the bank. The regulators warned that the bank was vulnerable to a slowdown of the economy and ordered the bank to adopt new lending policies. The FDIC alleges that Defendants adopted such policies but failed to adhere to them when they approved certain risky loans.

Specifically, the FDIC challenges loans that the bank made to six borrowers from 2005 to 2008. The FDIC alleges that Defendants disregarded the bank's own policies in approving these loans by failing to ensure the borrowers' ability to repay, disregarding evidence of the borrowers' financial weakness, and structuring loans with terms that were unreasonably generous to the borrowers. The FDIC alleges that Defendants' approval of loans to these borrowers constituted gross negligence.

In addition to the loan challenges, the FDIC also challenges Defendants' decision to retain certain preferred stock in mortgage lenders Fannie Mae and Freddie Mac. Though many banks held securities in these companies, the FDIC alleges that Midwest held them in an unusually high concentration. The FDIC alleges that, under the bank's own policies, Defendants were required to sell these securities because they could not justifiably have been expected to return to their "basis value"—the price at which the bank purchased them. Defendants nevertheless decided to retain the securities, and the bank lost over $66 million when they

became practically worthless. Again, the FDIC alleges that Defendants' decision to retain these securities constituted gross negligence.

On May 14, 2010, the Illinois Department of Financial and Professional Regulation ("IDFPR") closed Midwest, and the FDIC was appointed receiver. As receiver, the FDIC succeeded to any rights of the bank's stockholders, depositors, accountholders, and other creditors. The FDIC filed this suit on April 30, 2013.

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of the motion to dismiss, the court takes all facts alleged by the claimant as true and draws all reasonable inferences from those facts in the claimant's favor, although conclusory allegations are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III. ANALYSIS

Five other judges in this district have considered motions to dismiss in cases brought by the FDIC involving substantially similar allegations. *See FDIC v. Elmore*, No. 13 C 1767, 2013 WL 6185236 (N.D. Ill. Nov. 22, 2013) (St. Eve, J.); *FDIC v. Pantazelos*, No. 13 C 2246, 2013 WL 4734010 (N.D. Ill. Sept. 3, 2013) (St. Eve, J.); *FDIC v. Giannoulias*, 918 F. Supp. 2d 768 (N.D. Ill. 2013) (Grady, J.); *FDIC v. Mahajan*, No. 11 C 7590, 2012 WL 3061852 (N.D. Ill. July

26, 2012) (Kendall, J.); *FDIC v. Spangler*, 836 F. Supp. 2d 778 (N.D. Ill. 2011) (Dow, J.); *FDIC v. Saphir*, No. 10 C 7009, 2011 WL 3876918 (N.D. Ill. Sept. 1, 2011) (Pallmeyer, J.). The court's analysis in this case is guided by these recent decisions.

**A. Consideration of Documents Attached to the Motions to Dismiss**

As an initial matter, the court must determine which materials it should consider in deciding the motion to dismiss. Defendants have attached numerous exhibits to their motion, including minutes of meetings of the Board of Directors, internal memoranda, and reports of regulators regarding the bank's exposure to risk. Defendants argue that these documents demonstrate that the FDIC's allegations are false. For example, they point to a 2010 report in which the Federal Reserve Bank of Chicago found that the bank's procedures for assessing risk were fundamentally sound. The FDIC argues that the court may not consider these exhibits because they are outside the scope of the complaint.

Generally, matters outside the complaint may not be considered on a motion to dismiss. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). An exception to this rule is that the court may consider "documents that are critical to the complaint and referred to in it." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The Seventh Circuit has stated that this "is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). The documents that Defendants have asked the court to consider, however, are more akin to exhibits typically submitted in connection with a motion for summary judgment. They are lengthy, complex materials that contain a great deal of information, some of which is helpful to the FDIC, and some of which is helpful to Defendants. It is not appropriate for the court at this stage of the case to interpret these documents or to weigh the evidence contained in them. *Pantazelos*, 2013

WL 4734010, at *4 (finding that it was premature to consider documents offered to refute FDIC allegations). The court, therefore, will not consider these documents at this time.

**B. The Illinois Banking Act and Midwest's Charter**

Defendants argue that the FDIC's fiduciary duty and negligence claims are barred by the Illinois Banking Act and Midwest's charter. The Illinois Banking Act provides that a bank in Illinois may "establish that a director is not personally liable to the bank and its shareholders for monetary damages for a breach of the director's fiduciary duty," so long as the bank does not insulate the director for liability for gross negligence, a breach of the duty of loyalty, bad faith, or a transaction from which the director derived an improper personal benefit. 205 Ill. Comp. Stat. 5/39(b). Midwest's charter provides as follows:

> To the fullest extent permitted by the Illinois Banking Act as the same exists or may be hereafter amended, a director of this Bank shall not be liable to the Bank or its stockholders for monetary damages for breach of fiduciary duty as a director.

(Mot. to Dismiss Ex. J, ECF No. 48-10.) Defendants argue that the charter exculpates them from liability insofar as the FDIC alleges claims based solely on Defendants' negligence.

In *Saphir*, the court considered the same argument, but held that by invoking the bank's charter, the defendants were asserting an affirmative defense. 2011 WL 3876918, at *5. The court held that it was inappropriate to decide the merits of this affirmative defense on a motion to dismiss. *Id.* The five courts that have considered this argument post-*Saphir* have also agreed that reliance on the bank's charter is an affirmative defense that cannot be decided on a motion to dismiss. *Elmore*, 2013 WL 6185236, at *6 n.6; *Pantazelos*, 2013 WL 4734010, at *4; *Giannoulias*, 918 F. Supp. 2d at 774; *Mahajan*, 2012 WL 3061852, at *7; *Spangler*, 836 F. Supp. 2d at 792. This court agrees, and so the motion to dismiss on this ground is denied.

## C. Business Judgment Rule

Defendants next argue that the FDIC's claims are barred by the business judgment rule. Under Illinois law, the business judgment rule "'is a presumption that directors of a corporation make business decisions on an informed basis, in good faith, and with the honest belief that the course taken was in the best interest of the corporation." *Mahajan*, 2012 WL 3061852, at *7 (citing *Ferris Elevator Co., Inc.*, 674 N.E.2d 449, 452 (Ill. App. Ct. 1996)). The purpose of the rule is to protect directors who have been diligent and careful in performing their duties from being subjected to liability from honest mistakes of judgment. *Stamp v. Touche Ross & Co.*, 636 N.E.2d 616, 621 (Ill. App. Ct. 1993). Under Illinois law, however, "it is a prerequisite to the application of the business judgment rule that the directors exercise due care in carrying out their corporate duties." *Davis v. Dyson*, 900 N.E.2d 698, 714 (Ill. App. Ct. 2008). If directors fail to exercise due care, then they may not use the business judgment rule to shield their conduct. *Id.*

There is disagreement within this district as to whether a defendant may assert the business judgment rule as a defense at the motion to dismiss stage. *Compare Saphir*, 2011 WL 3876918, *5-9 (finding that the business judgment rule was an affirmative defense) *with Spangler*, 836 F. Supp. 2d at 792 (finding that the business judgment rule is not an affirmative defense). Courts in similar cases have recognized, however, that they need not resolve this disagreement, because even if the business judgment is not an affirmative defense, the FDIC's claims would survive its invocation at this stage. *Elmore*, 2013 WL 6185236, at *5.

For example, in *Spangler*, the FDIC alleged that defendants "disregarded regulatory warnings of unsafe lending practices and monthly reports reflecting dangerous loan concentration and excessive growth, failed to follow the bank's business plans and loan policies, and took no action to reform underwriting practices in response to criticism." 836 F. Supp. 2d at

792. The court held that these allegations were sufficient to defeat the business judgment rule at the motion to dismiss stage, as they supported a finding that the defendants not only "misjudged the proper safeguards to be taken," but also "failed to obtain the necessary information to make rational business decisions regarding those safeguards." *Id.*

Similarly, in *Mahajan*, the FDIC alleged that the defendants "received repeated warnings from both the FDIC and the IDFPR that the Defendants' management of the Bank had serious failings, including undersecured loans, unsafe levels of reserves, and insufficient staff to adequately monitor loans and associated collateral." 2012 WL 3061852, at *8. It alleged that the defendants "were aware of these warnings but took no action to rectify the concerns" and that, by 2008, regulators warned that the bank's failings "presented an imminent threat to the institution's viability." *Id.* Again, the court found that assuming these allegations were true, the defendants' actions could not be excused by the business judgment rule.

In *Giannoulias*, the "[t]he defendants' alleged negligence generally [fell] into the following categories: (1) approving high-risk loans and loan-renewals without proper underwriting, *e.g.*, failing to verify the finances of borrowers and guarantors, (2) ignoring the bank's loan policy, *e.g.*, approving loans based upon an 'as completed' (not 'as is') appraisal, and (3) ignoring market risks and regulatory warnings about over-concentration in [commercial real estate]/[acquisition, development, and construction] loans." 918 F. Supp. 2d at 770 (citations omitted). The court noted that the FDIC's allegations were similar to the allegations in *Spangler* and held that they overcame the presumption created by the business judgment rule. *Id.* at 774. The court held that it did "not consider it a close question" that the FDIC adequately pled claims for gross negligence, negligence, and breach of fiduciary duty. *Id.* at 772.

And in *Elmore* and *Pantazelos*, the court concluded that allegations that the defendants failed to heed regulator warnings, adhere to bank policies, and obtain adequate information from borrowers were "similar to those in *Spangler* and *Giannoulias*, where the courts refused to apply the business judgment rule at the motion to dismiss stage." *Elmore*, 2013 WL 6185236, at *6; *Pantazelos*, 2013 WL 4734010, at *6.

The same allegations are present here. With respect to the challenged loans, the FDIC alleges that the Federal Reserve Bank of Chicago and the IDFPR warned Defendants that their risk-management practices were unsound and that the bank was vulnerable to a slowdown in the economy. These regulators made specific recommendations to Defendants, which the FDIC alleges Defendants did not follow. Instead, Defendants allegedly loaned millions of dollars to borrowers without obtaining even basic information that would enable them to make a rational business decision to approve the loan. The FDIC alleges that Defendants' conduct violated the bank's own policies requiring, among other things, that the borrower's ability to repay be demonstrated by an objective analysis of financial information, that loans to borrowers be limited to a certain amount, and that appraisals be obtained before approving loans that were secured by real estate. This court agrees with the other courts in this district, which have found that these allegations are sufficient to render the business judgment rule inapplicable at this stage of the case, and that the allegations adequately state a claim of gross negligence under Illinois law.

With respect to the decision to retain preferred stock in Fannie Mae and Freddie Mac, here, too, the FDIC alleges that Defendants were warned by the bank's independent accountants that there was no objective basis to conclude that the stock's value would recover within a reasonable period of time. The FDIC alleges that, under the bank's own policies, then, Defendants were required to sell these securities, but that they failed to do so. The FDIC alleges

that this decision was not the result of any rational decision-making process, but was rather motivated by wishful thinking and a fear that selling the stock might adversely affect the bank's earnings and its ability to pay dividends. As with the FDIC's loan claims, these allegations are sufficient at this stage of the case.

## D. Duplicative Counts

Finally, Defendants argue that the FDIC's negligence claims are duplicative of their breach of fiduciary duty claims and should therefore be dismissed, relying on *Spangler*. In that case, the court dismissed the breach of fiduciary duty claim as duplicative of the negligence claim, but the court did so without prejudice, and gave the FDIC leave to "replead if it wishes to include both claims in the alternative." *Spangler*, 836 F. Supp. 2d at 793. After *Spangler*, courts have permitted the FDIC to plead both negligence and fiduciary duty claims, so long as one claim is pleaded in the alternative to another. *See, e.g.*, *Elmore*, 2013 WL 6185236, at *7. The FDIC has done that here, and so it may proceed on both counts.

## IV. CONCLUSION

For the foregoing reasons, the court denies Defendants' motion to dismiss.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 19, 2014